UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GLOBAL METAL TRADING
COMPANY, INC.,

     Plaintiff,

v.                            CASE NO.: 8:13-cv-1767-T-23EAJ

PLANET METALS, LLC, NARISH
KIRPALANI, and CHARLES KLEIN,

     Defendants.

_____/

## **ORDER**

The plaintiff sued (Doc. 2) in state court and alleged fraud, unjust enrichment, "constructive trust," and two counts of civil theft.[1]  The defendants removed (Doc. 1) and move (Doc. 7) to dismiss for lack of personal jurisdiction, to transfer for forum non conveniens, or to compel arbitration.  Each count arises from a series of deliveries of "materials" that allegedly failed to conform with the parties' agreement.

*1. Personal Jurisdiction*

"To obtain in personam jurisdiction over a nonresident defendant, the plaintiff has the burden of pleading sufficient facts to permit Florida courts to exercise

---

[1] Oddly, the plaintiff now says that the complaint "stated three causes of action" – "fraud and t[w]o separate counts of civil theft." (Doc. 14 at 5)

jurisdiction." *Harris v. Caribank*, 536 So. 2d 394, 395 (Fla. 4th DCA 1989).  The

plaintiff's complaint acknowledges that Planet Metals is incorporated outside

Florida, that Kirpalani and Klein reside in Connecticut, and that the defendants

"acts and omissions occurred outside of the State of Florida." (Doc. 2, ¶¶ 3, 4, 14).

However, the plaintiff argues that the defendants engaged in ten transactions with the

plaintiff – a Florida corporation – with "a total value of $1.2 million" (Doc. 14-2

at 2), that the defendants personally solicited the plaintiff (Doc. 2, ¶ 5 and Doc. 14-2,

¶ 3), that the defendants tortiously injured the plaintiff (Doc. 14 at 4), and that the

defendants "anticipated a long-term business relationship" with the plaintiff.

(Doc. 14 at 4)

　　　The defendants argue, "The Plaintiff's complaint is devoid of any allegations

that any Defendant maintains an office in Florida, or that the specific Defendant

has substantial number of clients in Florida, or that any Defendant maintains

business licenses in Florida, or that Defendant derives revenue from operations

directed specifically at Florida residents." (Doc. 7 at 4, 6)  Also, the defendants'

explain that Planet Metals shipped the "materials" to India and China (Doc. 7 at 5);

that Connecticut is the principal place of business of Planet Metals, a Delaware

corporation (Doc. 7-1, ¶ 1)[2]; that Planet Metals has no office in Florida and "does

not employ any employees within Florida" (Doc. 7-1, ¶ 3); that Global Metal's

---

[2] Elsewhere, the defendants state that "Planet Metal[s], LLC is an Alabama corporation."
(Doc. 7 at 5)

- 2 -

"representatives . . . review[ed] . . . and inspected the material at locations within either Pennsylvania and/or Maryland" (Doc. 7-1, ¶ 9); and that "[n]o inspections were conducted in Florida."[3]  (Doc. 7-1, ¶ 9)

First, the exercise of jurisdiction must comport with Florida's long-arm statute. *See Progressive Growth v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). Second, due process "requires that the defendant[s] have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant[s] does not offend traditional notions of fair play and justice."  *Progressive*, 421 F.3d at 1166 (internal quotation marks omitted).

Global Metal's tort claims against the defendants satisfy Section 48.193(1)(a)(2), Florida Statutes.  Despite having no physical presence in Florida, the defendants' conduct allegedly caused tortious injury in Florida.  *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) ("[T]he Florida long-arm statute permits jurisdiction over the nonresident defendant who commits a tort outside the state that causes injury inside the state."); *Wendt v. Horiwitz*, 822 So. 2d 1352, 1260 (Fla. 2002).

---

[3] Quoting *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010), the defendants also argue (half-heartedly) that no personal jurisdiction exists because "the Complaint fails to state a claim on all counts plead." (Doc. 7 at 4) However, as the plaintiff correctly states, the defendants "do not substantiate the claims that the allegations are not sufficient [and fail] to specify which elements were lacking." (Doc. 14 at 5)

Also, the exercise of personal jurisdiction satisfies due process.  The defendants "directly solicit[ed]" the plaintiff in Florida.  (Doc. 2 at 1)  The defendants' purposeful conduct necessarily both affected Global Metal and "created a 'substantial connection'" with Florida.  *Licciardello*, 544 F.3d at 1285.  Having directly solicited a Florida corporation for commercial gain and engaged in ten transactions with an aggregate worth over $1 million, the defendants should have "reasonably anticipated" that their conduct subjected them to jurisdiction in Florida. *See Licciardello*, 544 F.3d at 1284; *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

Finally, jurisdiction comports with notions of "fair play and justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945); *Licciardello*, 544 F.3d at 1284.  "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Licciardello*, 544 F.3d at 1288.  Florida also acquires an interest in resolving a dispute

over a contract that benefits a person in Florida.[4] *Licciardello*, 544 F.3d at 1288;

*Cronin v. Washington Nat'l Ins.*, 980 F.2d 663, 671 (11th Cir. 1993).

*2. Forum Non Conveniens*

Arguing that this action is the "textbook case for immediate *forum non*

*conveniens*," the defendants state that "it is clear that all of the transactions and

contractual performance allegations arise out from Connecticut and not Florida."

(Doc. 7 at 8)  However, notwithstanding some misplaced terminology in a few

judicial decisions, "[s]ince the convenience transfer statute, Section 1404(a), was

enacted in 1948, the federal doctrine of forum non conveniens has continuing

application only in cases in which the alterative forum is abroad." *Moore's Federal*

*Practice*, Vol. 17, § 111.71 (3d ed. 2012).  Construed as a request for a Section 1404(a)

transfer, the defendants' conclusive statement is insufficient; "'[t]he plaintiff's choice

of forum should not be disturbed unless it is clearly outweighed by other

considerations.'  It is the movant's burden to persuade the court that a transfer should

---

[4] The defendants explain that "'Charles Klein' is a fictitious name and that no actual individual exists for purposes of this lawsuit." (Doc. 7 at 1) Kirpalani states in an affidavit, "'Charles Klein' is not an employee of Planet Metals nor does the person actually exist for purposes of this lawsuit. At no time, was the name 'Charles Klein' used in any transaction associated with the performance of the terms and conditions of these Service Agreements." (Doc. 7-1, ¶ 11) Also, the plaintiff's complaint mentions Klein only in a generic jurisdiction statement and alleges only that he "resid[es] in Connecticut." (Doc. 2 at ¶¶ 4, 14) In response to the defendants' motion and affidavit, the plaintiff states only that the plaintiff "received e-mails from 'Charles Klein' and, therefore, believes he is a real person." (Doc. 14 at 8 n.1) However, "where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

be granted." *Perlman v. Delisfort-Theodule*, 451 F. App'x 846, 848 (11th Cir. 2012)

(alternation in original) (citation omitted).

*3. Arbitration*

Arguing that the parties agreed to arbitrate, the defendants identify an

arbitration agreement printed in each of the ten invoices:

> All disputes in connection with the execution of this Contract
> shall be settled friendly through negotiation between the Buyer
> and the Seller. In case no settlement can be reached, the case
> may then be submitted by the Seller as required by the Buyer
> for arbitration. The arbitration shall take place in Connecticut,
> and the decision of the Arbitration Committee shall be final and
> binding upon both parties; neither party shall seek recourse to a
> law court or other authorities to appeal for the revision of the
> decision. Arbitration fee shall be borne by the losing party.

The plaintiff argues that only Planet Metals signed the agreement and that the

agreement applies only to "disputes in connection with the execution" of the

contract, which the plaintiff asserts is inapplicable because the complaint alleges tort,

not breach of contract, actions.

A signature is not necessarily required to enforce an arbitration agreement.

*Fi-Evergreen Woods, LLC v. Robinson*, 2013 WL 5493462, at *3 (Fla. 5th DCA Oct. 4,

2013) ("A failure to sign an arbitration agreement does not automatically render the

agreement invalid.")  Instead, "[i]n the absence of a signature, the courts look to a

party's words and conduct to determine whether the party assented to the

agreement." *Fi-Evergreen Woods, LLC*, 2013 WL 5493462, at *3; *accord H.W. Gay

Enterprises, Inc. v. John Hall Elec. Contracting, Inc.*, 792 So. 2d 580, 581 (Fla. 4th DCA

2001) (finding that, by words and conduct, the plaintiff assented to an arbitration agreement that only the defendant signed).[5]  The plaintiff received ten invoices, each signed by the defendants, for ten orders placed over six weeks, and each invoice contained an arbitration agreement conspicuously placed within the four-page document.  The plaintiff never objected to the agreement.  Accordingly, the plaintiff's conduct expressed assent to the agreement.

Also, the plaintiff argues that because each count in the complaint alleges a tort claim, the arbitration agreement – which applies to "[a]ll disputes in connection with the execution of th[e] Contract" – is inapplicable.  The plaintiff asserts, without support, that the arbitration agreement applies to a breach of contract, not a tort, claim.  However, "a plaintiff cannot disguise an arbitrable breach of contract claim by slapping a tort claim label on it."  *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1221 n.13 (11th Cir. 2011) (construing Eleventh Circuit precedent); *accord Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993) ("[A] party may not avoid a contractual arbitration clause merely by casting its

---

[5] The parties fail to address whether Florida or Connecticut law applies to the agreement. However, this order is unaffected by the choice of law issue. For example, *MBNA America Bank, N.A. v. Bailey*, 2005 WL 1754881 (Conn. Super. Ct. May 25, 2005) (quoting *Schwarzschild v. Martin*, 191 Conn. 316, 321-22 (1983)), explains Connecticut law:

> The defendant argues that he did not sign this agreement and that the arbitration agreement is invalid as a result. [Connecticut statutory law], however, does not specifically require a signature. "In the absence of a statute requiring a signature . . . parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract."

complaint in tort."), *cited with approval in Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996); *Kroll v. Doctor's Assocs., Inc.*, 3 F.3d 1167, 1170 (7th Cir. 1993) ("[A] plaintiff may not avoid an otherwise valid arbitration provision merely by casting its complaint in tort." (internal quotation marks omitted)); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.").

   As a final argument, the plaintiff states that the arbitration agreement is unenforceable because the agreement "deprives Plaintiff of the benefits and protections of Florida against common law fraud and the statutorily created protections against civil theft" and because the agreement deprives the plaintiff of a "constitutional right to appeal."  (Doc. 14 at 7)  However, the arbitration agreement waives no claim – the agreement sets only the forum for a claim – and although the arbitrator's decision "shall be final and binding upon both parties," (Doc. 8-1 at 3) the parties' "constitutional right to appeal" remains.  *Rollins, Inc. v. Black*, 167 F. App'x 798, 799 n.1 (11th Cir. 2006) ("A 'binding, final, and non-appealable' arbitral award does not mean the award cannot be reviewed.  It simply means the parties have agreed to relinquish their right to appeal the merits of their dispute; it does not

mean the parties relinquish their right to appeal an award resulting from an arbitrator's abuse of authority, bias, or manifest disregard of the law.").

The defendants' motion (Doc. 7) is **GRANTED IN PART**.  Under 9 U.S.C. § 4, the parties are directed to "proceed to arbitration in accord with the terms of the [arbitration] agreement."  This action is **STAYED** pending arbitration.  The clerk is directed to terminate any pending motion and to administratively close the case pending notice from a party that the arbitration is complete.

ORDERED in Tampa, Florida, on December 4, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE